UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REBECCA S.-C., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>　　　　Defendant. | CASE NO. C18-357-MJP-BAT <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff seeks review of the denial of her Disability Insurance Benefits application. She contends the ALJ erred by misevaluating the opinions of her treating doctors, failing to consult a medical expert regarding the onset date of her disability, and misevaluating her subjective testimony. Dkt. 7. The Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

Plaintiff is currently 55 years old, has an associate arts degree, and has worked as an ultrasound technologist and medical assistant. Tr. 38, 51, 131. In April 2015, she applied for benefits, alleging disability as of January 31, 2007. Tr. 131. She later amended her alleged onset date to September 2, 2014. Tr. 142. After her application was denied initially and on reconsideration, the ALJ conducted a hearing and, on December 2, 2016, issued a decision

REPORT AND RECOMMENDATION - 1

finding plaintiff not disabled through December 31, 2014, her date last insured. Tr. 15-27. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: fibromyalgia, pes planus, mild degenerative first tarsometatarsal (TMT) joint, left ankle tendinosis and tibial tendon tear, and gastrocnemius equinus; and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 17-19. The ALJ found that plaintiff had the residual functional capacity to perform light work except she could stand and/or walk for four hours in an eight-hour workday; she could never crawl or climb ladders, ropes or scaffolds; she could occasionally balance, stoop, kneel, crouch, and climb ramps or stairs; she had to avoid concentrated exposure to vibration and hazards; she could never operate foot controls with the left leg. Tr. 19. The ALJ found that plaintiff was unable to perform her past relevant work but, as there were jobs that exist in significant numbers in the national economy that she could perform, she was not disabled. Tr. 25-27.

## DISCUSSION

### A. Medical opinions

Plaintiff argues that the ALJ erred in evaluating the opinions of treating doctors Andrew Dym, M.D., and Eric Heit, D.P.M. In general, the ALJ must give specific and legitimate reasons for rejecting a treating doctor's opinion that is contradicted by another doctor, and clear and

---

[1] 20 C.F.R. § 404.1520.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

convincing reasons for rejecting a treating doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

*1.    Dr. Dym*

Dr. Dym, who treated plaintiff's fibromyalgia, opined in March 2016 that plaintiff could lift/carry and push/pull 10 pounds frequently and 20 pounds occasionally. Tr. 541. He opined that plaintiff could stand, walk, and sit for less than two hours in an eight-hour workday. *Id.* And he opined that plaintiff had good days and bad days due to pain; she would be absent, need to take unscheduled breaks, or need to leave work early due to pain more than five days per month; and she had moderate impairment in her ability to persist and maintain appropriate pace and in her concentration and productivity. Tr. 542.

The ALJ gave Dr. Dym's opinion little weight. Tr. 25. The ALJ found that Dr. Dym's opinion was not consistent with the treatment records through the date last insured. *Id.* Specifically, the ALJ found that the medical evidence showed that plaintiff experienced good results and significant improvement in pain after her ankle surgery until after the date last insured, and that she received minimal treatment for fibromyalgia, which was effectively managed with Lyrica. *Id.* The ALJ also found that plaintiff's ability to travel and attend the Renaissance Festival during the period at issue showed a level of functioning in excess of Dr. Dym's opinion. *Id.*

REPORT AND RECOMMENDATION - 3

1   Plaintiff argues that the evidence regarding her surgery is related solely to her foot and
2   ankle problems, which Dr. Dym did not treat. Dkt. 7 at 3. She points out that Dr. Dym treated her
3   for fibromyalgia and listed this diagnosis as the basis for his opinion. *Id.* Plaintiff also argues that
4   in characterizing her treatment for fibromyalgia as minimal, the ALJ failed to take into account
5   the unique nature of fibromyalgia and the limited treatment options available, failed to identify
6   any other treatment that Dr. Dym might have considered, and failed to support his conclusion
7   that her symptoms were effectively managed with Lyrica. Dkt. 7 at 3-4.

8   The court agrees that the treatment notes for plaintiff's follow-up visits after ankle
9   surgery are not relevant to an assessment of Dr. Dym's opinion. These visits were narrowly
10  focused on plaintiff's recovery from surgery. *E.g.*, 498-500. However, the court finds that the
11  inconsistency between Dr. Dym's opinion and the treatment records regarding fibromyalgia was
12  a valid reason to discount the opinion.

13  In February 2014, Dr. Dym noted that plaintiff had a known history of fibromyalgia and
14  she wished to discuss the disability process. Tr. 263. Plaintiff reported that she was becoming
15  increasingly fatigued for most activity and that she frequently travelled for business and found
16  herself "unable to do many of the typical tasks." *Id.* In March 2014, a medical assistant filled a
17  prescription for Lyrica written by Dr. Dym and noted that plaintiff had tried gabapentin and
18  nortriptyline but Lyrica had proven to be the only effective treatment. Tr. 259. In April 2015,
19  plaintiff reported to Dr. Dym that her chronic pain issues from fibromyalgia were perhaps a bit
20  worse; Dr. Dym increased plaintiff's dosage of Lyrica. Tr. 218.

21  Plaintiff argues that the ALJ failed to identify any support for his finding that her
22  fibromyalgia symptoms were effectively managed with Lyrica, failed to identify any treatment
23  records from the relevant period (from September 2, 2014, through December 31, 2014)

suggesting that Lyrica was an effective treatment, and failed to identify any other effective treatment for fibromyalgia that Dr. Dym might have considered. Dkt. 7 at 3-4. But the ALJ discussed the March 2014 treatment note identifying medications plaintiff had tried but were not effective and stating that Lyrica has proven the only effective treatment. Tr. 20. And plaintiff has not identified—nor has the court discerned—any treatment records regarding fibromyalgia from September 2, 2014 through December 31, 2014. The record is simply devoid of treatment records for this condition during the relevant period. And the treatment records that do exist for this condition are devoid of any clinical findings to support Dr. Dym's opinion. It is not the ALJ's burden to identify treatment options that a claimant's doctor did not discuss. And the ALJ is not required to interpret a statement that a medication was effective to mean anything other than what it said.

An ALJ may properly reject a treating doctor's opinion that is inconsistent with the record and not supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Even considering the unique nature of fibromyalgia, the lack of support in the record, the minimal treatment, and the effectiveness of medication were inconsistent with Dr. Dym's opinion and a valid reason to discount it.

Because the ALJ gave a valid reason to discount the opinion, the ALJ's reliance on the post-surgery treatment notes was harmless. Furthermore, the court need not address the ALJ's other reason for discounting the opinion. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

    *2.    Dr. Heit*

Dr. Heit, plaintiff's treating podiatrist, opined in February 2016 that plaintiff could that plaintiff could lift/carry and push/pull less than 10 pounds frequently and occasionally. Tr. 537.

REPORT AND RECOMMENDATION - 5

1  He opined that plaintiff could sit for at least six hours and stand and/or walk for less than two
2  hours in an eight-hour workday. *Id.* And he opined that plaintiff had good days and bad days due
3  to pain; she would be absent, need to take unscheduled breaks, or need to leave work early due to
4  pain more than five days per month; and she had moderate impairment in her ability to persist
5  and maintain appropriate pace and in her productivity, and mild impairment in in her
6  concentration due to pain. Tr. 538.

7        The ALJ gave Dr. Heit's opinion little weight. Tr. 24-25. The ALJ found that Dr. Heit's
8  opinion was inconsistent with the treatment records through the date last insured. Tr. 25.
9  Specifically, the ALJ found that the medical evidence showed that plaintiff experienced good
10 results and significant improvement in pain after her ankle surgery until after the date last
11 insured. *Id.* The ALJ also found that plaintiff's ability to travel and attend the Renaissance
12 Festival during the period at issue showed a level of functioning in excess of Dr. Heit's opinion.
13 *Id.*

14       Plaintiff argues that the improvement she experienced after surgery was only temporary
15 and provided no basis for rejecting Dr. Heit's opinion. Dkt. 7 at 7. She asserts that the ALJ failed
16 to cite any evidence to support his conclusion that the reoccurrence of her ankle pain was
17 unrelated to the impairments that existed before her date last insured. *Id.*

18       Plaintiff experienced great improvement and little to no pain after her November 2014
19 surgery. Tr. 497-500. This continued until March 2015 when she presented to Dr. Heit with a
20 "new injury" in her left foot, which she believed was brought on by doing too much too soon. Tr.
21 495. Dr. Heit's examination and x-rays revealed that everything looked fine as far as her surgical
22 recovery and she continued to have a very good degree of correction of her flat foot. *Id.* An MRI
23 later revealed a partial tear across the surgical site. Tr. 493. In May 2015, Dr. Heit assessed a

1  reinjury of her posterial tibial tendon and stated that the issues with this tendon "seem to be
2  recurrent in nature." Tr. 489-90.

3  Plaintiff argues that the ALJ could not reasonably find her more recent ankle pain to be
4  unrelated to her prior impairments when the pain was in the same ankle and she received the
5  same diagnosis, imaging documented a tear across the surgery site, and Dr. Heit described her
6  condition as a recurrence of the prior problem. Dkt. 7 at 8. But the evidence plaintiff identifies
7  does not render the ALJ's interpretation of her ankle impairment unreasonable. For example,
8  plaintiff describes a statement by Dr. Heit that he "attempted" to repair he tendon as "suggesting
9  he viewed the surgery as unsuccessful." Dkt. 7 at 9. But Dr. Heit's full statement was: "We
10 attempted a repair but she re-tore the tendon necessitating a major hind-foot fusion surgery." Tr.
11 539. This statement does not undermine the ALJ's assessment that plaintiff's foot problems after
12 the date last insured were due to a new injury, i.e., she re-tore the tendon. And plaintiff herself
13 characterizes this statement as "suggesting" that Dr. Heit viewed it as the same impairment. A
14 statement that merely "suggests" one possible interpretation does not make a different
15 interpretation unreasonable.

16 Plaintiff proposes an interpretation of the evidence where her ankle problems are due to
17 one continuous impairment that was disabling before the date last insured and continued long
18 enough to meet the duration requirement. But the ALJ's interpretation, that plaintiff's
19 impairment was successfully treated with surgery before the date last insured and did not rise to
20 the level of a disabling impairment before that date, was a rational interpretation of the evidence.
21 Where the ALJ's interpretation was rational, the court may not disturb it. *Thomas v. Barnhart*,
22 278 F.3d 947, 954 (9th Cir. 2002). This was a valid reason to reject the opinion.

23

REPORT AND RECOMMENDATION - 7

Because the ALJ gave a valid reason to discount the opinion, the court need not address the ALJ's other reason for discounting the opinion. *See Stout*, 454 F.3d at 1055.

**B.     Medical expert**

Plaintiff argues that because there was substantial evidence showing that she was disabled at some point after the date last insured, the ALJ was required to call a medical expert to establish the onset date of her disability. Dkt. 7 at 9. She relies on *Sam v. Astrue*, 550 F.3d 808 (9th Cir. 2008), and Social Security Ruling 83-20 to support this argument. *Id.* But these sources do not support her contention.

SSR 83-20, in effect at the time of the ALJ's decision,[3] provides that the established onset date of disability must be fixed based on the facts and can never be inconsistent with the medical evidence of record. If precise evidence is not available, the ALJ may make an inference based on an informed judgment of the facts in the particular case. This judgment must have a legitimate medical basis. For this reason, the ALJ should call on the services of a medical advisor when onset must be inferred. The court in *Sam* held that the procedures prescribed in SSR 83-20 did not apply in that case because the ALJ found that Sam was not disabled at any time through the date of the decision and the question of when he because disabled therefore did not arise. *Sam*, 550 F.3d at 810.

Here, the ALJ found plaintiff not disabled at any time through her date last insured. Tr. 27. Therefore, even if the court accepts plaintiff's contention that the opinions of Dr. Dym and Dr. Heit establish that she was disabled after her date last insured, the question of when plaintiff became disabled did not arise, as plaintiff had to establish disability before her date last insured to be entitled to benefits.

---

[3] *See* SSRs 18-1p and 18-2p.

REPORT AND RECOMMENDATION - 8

1  The ALJ's determination that plaintiff was not disabled through the date last insured was
2  based on the medical evidence of record and other facts in the case. The ALJ was not required to
3  call a medical expert to establish an onset date in this case.

4  **C.  Plaintiff's testimony**

5  Plaintiff argues that the ALJ erred in rejecting her account of her symptoms. As the ALJ
6  did not find that plaintiff was malingering, the ALJ was required to provide clear and convincing
7  reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An
8  ALJ does this by making specific findings supported by substantial evidence. "General findings
9  are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence
10 undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

11 The ALJ found that plaintiff's statements about her symptoms were not entirely
12 consistent with the medical and other evidence through the date last insured. Tr. 20. The ALJ
13 found that plaintiff's treatment record from the relevant period was inconsistent with her
14 testimony and her claims of debilitated functioning were inconsistent with contemporaneous
15 reports of functioning during the relevant period. *Id.*

16 The ALJ gave a lengthy summary of the medical evidence. Tr. 20-22. Plaintiff argues a
17 summary of the medical evidence is not the same as providing clear and convincing reasons for
18 rejecting her testimony. Dkt. 7 at 11. But the ALJ explained his interpretation of the medical
19 evidence at the conclusion of summarizing it. Tr. 22-23. It was not error for the ALJ to include a
20 summary of the medical evidence when the ALJ explained his interpretation of that evidence and
21 gave other reasons for rejecting plaintiff's testimony.

22 The ALJ found that the medical evidence showed that plaintiff did not experience severe
23 pain until July 2014 and only received conservative treatment prior to that time. Tr. 22. Plaintiff

REPORT AND RECOMMENDATION - 9

argues that even if this is true, this finding is irrelevant because she claims disability beginning on September 2, 2014. Dkt. 7 at 11. The ALJ noted this date in describing the course of plaintiff's treatment for her ankle impairment, including finding that she experienced significant improvement in her pain after her November 2014 surgery until after her date last insured. Tr. 22. The ALJ did not err by considering the entire course of plaintiff's treatment, even when some of that treatment occurred outside the relevant period. This is particularly true in this case, where the relevant period is less than four months and one of the issues was whether plaintiff had established that her impairment became disabling during the relevant period.

The ALJ found that the medical evidence showed significant improvement after surgery until after the date last insured, when plaintiff reinjured her ankle and required additional surgical intervention. Tr. 22. Plaintiff argues that, as when evaluating the medical opinions, the ALJ improperly discounted the subsequent treatment notes documenting severe pain from a recurrence of her posterior tibial tendinopathy. Dkt. 7 at 11. But as with the ALJ's evaluation of the medical opinions, the ALJ's interpretation of the evidence—that plaintiff reinjured her ankle after her date last insured and the impairment was not disabling during the relevant period—was a rational interpretation that this court cannot disturb.

Plaintiff argues that the ALJ improperly required her to establish that she had disabling symptoms for a 12-month period prior to her date last insured. Dkt. 7 at 11. In concluding that the medical evidence showed that plaintiff's ankle pain did not become severe until July 2014, she experienced significant improvement after her November 2014 surgery, and this continued until she reinjured her ankle after her date last insured, the ALJ stated that plaintiff "did not have disabling left ankle symptoms for a 12 month period prior to the date last insured." Tr. 22. The ALJ misstated the standard: plaintiff is required to establish that she became disabled before her

REPORT AND RECOMMENDATION - 10

date last insured and that the disability lasted for a continuous period of at least 12 months, not that the disability lasted for 12 months before her date last insured. *See* 42 U.S.C. § 423 (insured status); 20 C.F.R. §§ 404.1509 (duration requirement). But, despite this misstatement, the ALJ properly considered whether plaintiff was disabled during the period from her alleged onset date through her date last insured. As the ALJ found that plaintiff did not establish that she was disabled before her date last insured, the ALJ was not required to consider the duration requirement. The ALJ's misstatement about the durational requirement was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination).

The ALJ found that plaintiff received only minimal treatment for fibromyalgia and experienced effective control of her symptoms with Lyrica during the relevant period. Tr. 22. Evidence of minimal or conservative treatment is a valid reason to discount a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). And the effectiveness of medications is also a factor the ALJ may consider in assessing credibility. 20 C.F.R. § 404.1529(c)(3). Plaintiff again asserts that the ALJ failed to identify any more aggressive treatment options for fibromyalgia and did not consider that she had tried other medications. Dkt. 7 at 11. But the treatment note the ALJ cites to identifies the other medications she had tried and stated that Lyrica was the only effective treatment. Tr. 259. Plaintiff also argues that there is no evidence that any medication was sufficiently effective to restore her ability to work. Dkt. 7 at 11. Again, the only evidence relating to her fibromyalgia medication states that Lyrica was effective. Plaintiff proposes an interpretation of this note to mean that it was effective but only to a certain, unspecified extent. But the ALJ rationally interpreted the statement that Lyrica was effective to mean just that.

REPORT AND RECOMMENDATION - 11

1     The ALJ found that the medical evidence showed that plaintiff did not complain of
2 worsening fibromyalgia symptoms until after the date last insured. Tr. 22. Plaintiff asserts that
3 the fact that her symptoms were worse in April 2015 does not mean that her pain was not
4 disabling prior to that time. Dkt. 7 at 12. But again, she merely offers an alternative interpretation
5 of the evidence that does not invalidate the ALJ's interpretation of the evidence. In general,
6 plaintiff's proposed interpretation of the sparse medical evidence regarding her fibromyalgia
7 does not undermine the ALJ's rational interpretation of that evidence. The ALJ did not err in
8 finding that the medical evidence relating to plaintiff's fibromyalgia and her treatment for it did
9 not support her claimed limitations from that impairment.
10     Finally, the ALJ found that plaintiff's demonstrated activities of daily living during the
11 period at issue were consistent with an individual who could tolerate the ALJ's residual
12 functional capacity finding. Tr. 23. The ALJ cited to plaintiff's ability to tolerate traveling to
13 Florida and Italy and attend the Renaissance Festival, which the ALJ presumed to require a
14 significant amount of walking and overall physical exertion. *Id.*
15     Plaintiff argues that her travel to Florida and attendance at the Renaissance fair were
16 outside the relevant period, as those occurred before her alleged onset date. Dkt. 7 at 5, 12. And
17 she asserts that there is no evidence that her planned trip to Italy ever occurred. *Id.* In February
18 2014, she reported a planned trip to Florida. Tr. 262-63. In July 2014, plaintiff reported that she
19 was planning to attend an upcoming Renaissance Fair. Tr. 232. At the same visit, plaintiff also
20 reported that she was planning to travel to Italy in October and would be doing a lot of walking
21 and so was interested in custom orthotics. Tr. 232. In September 2014, she reported to Dr. Heit
22 that she was planning to be on vacation soon, she would see how she did using orthotics during
23 her vacation, and she would consider surgery afterwards. Tr. 517-18. She underwent surgery in

November 2014. Tr. 504. The ALJ rationally inferred from these contemporaneous reports that plaintiff went on her trip to Italy as planned.

Even if plaintiff's trip to Florida and the Renaissance Fair are excluded, the ALJ still identified travel activities inconsistent with her claimed limitations. The ALJ may not penalize a claimant for attempting to live a normal life in the face of her limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). But contradictions between a claimant's reported activities and her asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ did not merely note the fact that plaintiff travelled during the alleged disability period, but considered the amount of walking and overall physical exertion such travel requires, as plaintiff herself reported. This level of activity is inconsistent with her claimed limitations. This was a valid consideration in discounting plaintiff's subjective statements.

The ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective statements. Even if the ALJ erroneously stated the standard for the duration requirement, this error did not undermine the validity of the assessment of plaintiff's subjective statements.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and this case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **January 18, 2019**. If no objections are filed, the Clerk shall note the matter for as ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the

objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of January, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 14