UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REBECCA D. SANDIFER-CONWELL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY, | CASE NO. C18-357 MJP<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

THIS MATTER is before the Court upon Plaintiff's Objections (Dkt. No. 13) to the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge. (Dkt. No. 12.) Having reviewed the Report and Recommendation, the Objections, and all related papers, the Court ADOPTS the Report and Recommendations, AFFIRMS the Commissioner's decision, and DISMISSES this case with prejudice.

**Background**

The relevant facts and procedural background are set forth in detail in the Report and Recommendation. (Dkt. No. 12.) Plaintiff raises three objections to the Report and Recommendation: (1) The Report and Recommendation failed to apply the correct legal standard

in evaluating whether the ALJ should have consulted a medical expert; (2) Magistrate Judge Tsuchida erred in finding that the ALJ's decision to discount Dr. Dym's opinion was a rational interpretation of the evidence; and (3) Magistrate Judge Tsuchida's conclusion that the ALJ properly discounted Plaintiff's testimony was error. (Dkt. No. 13.)

I. **Legal Standard**

Under Federal Rule of Civil Procedure 72, the Court must resolve de novo any part of the Magistrate Judge's Report and Recommendation that has been properly objected to and may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); See also 28 U.S.C. § 636(b)(1).

II. **Plaintiff's Objections**

A. **Medical Expert**

On November 28, 2014 Plaintiff had surgery on her left ankle and appeared, during subsequent post-operative visits, to be healing well. (Tr. at 497 500.) An X-ray performed on January 8, 2015 showed "excellent correction of the flat foot." (Tr. at 22 (citing Ex. 4F/13).) The ALJ found that Plaintiff's surgery "yielded excellent results and significantly improved her pain until after the date last insured when she reinjured her left ankle and required additional surgical intervention." (Tr. at 22.) In March 2015, three months after her date last insured, Plaintiff presented to her doctor with a "new injury" in her left foot, which he diagnosed as a reinjury of her posterial tibial tendon and stated that the issues with this tendon seemed "to be recurrent in nature." (Tr. at 489-90.)

Plaintiff contends that the ALJ was required to retain a medical expert because the timing of her second ankle injury was unclear from the evidence and the ALJ therefore made an improper medical inference about the onset date of the second injury. (Dkt. No. 13 at 1-3.) "In

the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, [Social Security Ruling] 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir.1991). The duty to consult a medical expert, however, is only triggered by "either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured." Sam v. Astrue, 550 F.3d 808, 811 (9th Cir. 2008). Where, as here, the ALJ determines that the Plaintiff was not disabled "at any time through the date of [the] decision" (Tr. at 22), "the question of when she became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply." Sam, 550 F.3d at 810.

Plaintiff, however, maintains that because there was substantial evidence in the record of disability after the relevant period, Social Security Ruling 83-20 and Sam required the ALJ to consult a medical expert. (Dkt. No. 13 at 3.) But Plaintiff points to evidence of a "recurrent" injury that is functionally identical to the left ankle injury the ALJ already evaluated; evidence of that injury led the ALJ to conclude:

> [T]he [Plaintiff]'s demonstrated activities of daily living during the period at issue were consistent with an individual who could tolerate [light work]. Significantly, despite her complaints . . . [of] left ankle/foot instability, the evidence shows that she was able to tolerate traveling to Florida, traveling to Italy, and attending the Renaissance Festival, which presumably required a significant amount of walking and overall physical exertion.

(Tr. at 23.)

Since the ALJ found that Plaintiff's ankle injury was not disabling at any point through the date of the decision, made no explicit finding of disability after the date last insured, and Plaintiff has not pointed to substantial evidence demonstrating disability after the relevant period, the ALJ was not required to call a medical expert.

**B. Dr. Dym's Opinion**

Plaintiff next objects to Magistrate Judge Tsuchida's conclusion that the ALJ's decision to discount Dr. Dym's opinion was a rational interpretation of the evidence. An ALJ may properly reject a treating doctor's opinion that is inconsistent with the record and not supported by objective evidence. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Rather than merely stating her conclusions, the ALJ must set forth her own interpretations and explain why they, rather than the doctors', are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, the ALJ cited the following reasons to give Dr. Dym's opinion little weight:

> [H]is opinion regarding the severity of the [Plaintiff]'s pain and associated functional limitations is not consistent with the treatment records through the date last insured. . . . The medical evidence [] shows that she received minimal treatment for fibromyalgia, which was effectively managed with Lyrica. Her ability to travel and attend the Renaissance Festival during the period at issue shows a level of function in excess of his opinion.

(Tr. at 25.)

First, Plaintiff claims it was error for the ALJ to reject the opinion of Dr. Dym, a treating physician, in favor of a note from a medical assistant reporting that Lyrica was effective in treating Plaintiff's fibromyalgia. (Dkt. No. 13 at 5.) But this would only be error if this was the primary reason the ALJ discounted Dr. Dym's opinion; here the assistant's treatment note was simply one of many factors the ALJ cited. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (finding error only where a contradictory note from a non-examining medical advisor is the ALJ's primary reason for rejecting an examining physician's opinion).

Second, Plaintiff argues that the ALJ erred in characterizing her treatment for fibromyalgia as minimal by failing to consider the limited treatment options available for fibromyalgia and ignoring Plaintiff's ongoing prescriptions for Zoloft and Lyrica when noting

the absence of treatment notes during the relative period. (Dkt. No 13 at 4-6.) But an ALJ may properly reject a treating doctor's opinion that "is not supported by objective evidence" and in the absence of any treatment notes for Plaintiff's fibromyalgia during the relevant period it was rational for the ALJ to give Dr. Dym's opinion little weight. See Meanel, 172 F.3d at 1113-14; see also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (citation omitted) ("[A]lthough the evidence . . . may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

Finally, Plaintiff contends that because fibromyalgia symptoms are subjective, "the ALJ could not reasonably reject Dr. Dym's assessment based on a lack of objective clinical findings." (Dkt. No. 13 at 5.) But in discounting Dr. Dym's opinion, the ALJ noted factors that speak to Plaintiff's subjective experience of her symptoms—her travel and attendance at the Renaissance Festival.

Plaintiff's arguments regarding Dr. Dym's opinion are well addressed in the Report and Recommendation:

> The record is simply devoid of treatment records for this condition during the relevant period. And the treatment records that do exist for this condition are devoid of any clinical findings to support Dr. Dym's opinion. It is not the ALJ's burden to identify treatment options that a claimant's doctor did not discuss. And the ALJ is not required to interpret a statement that a medication was effective to mean anything other than what it said.

(Dkt. No. 12 at 5.)

But Plaintiff claims it was error for the Report and Recommendation to point to a lack of treatment notes regarding Plaintiff's fibromyalgia between September 2014 and December 2014 because the ALJ did not explicitly address the absence of notes. (Dkt. No. 13 at 4.) The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making

its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). The Court notes, however, that the ALJ's finding that during the relevant period Plaintiff "received minimal treatment for fibromyalgia" reflects the lack of evidence of treatment and can reasonably be interpreted as referring to the lack of treatment notes. (Tr. at 25.)

For these reasons, the Court does not find that the ALJ erred in giving Dr. Dym's opinion little weight.

**C. Plaintiff's Testimony**

Plaintiff next objects to Magistrate Judge Tsuchida's finding that the ALJ did not err in discounting Plaintiff's testimony. (Dkt. No. 13 at 3-4.) The ALJ found:

> [D]espite Plaintiff's complaints [of] widespread pain . . . the evidence shows that she was able to tolerate traveling to Florida, traveling to Italy, and attending the Renaissance Festival, which presumably required a significant amount of walking and overall physical exertion.

(Tr. at 23 (citations omitted).)

Repeating many of the arguments above, Plaintiff contends that the ALJ erred in finding that her fibromyalgia symptoms were resolved with Lyrica, failed to explain his opinion that she received minimal treatment for fibromyalgia, and improperly cited her travel as contradictory to her fibromyalgia symptoms. (Dkt. No. 13 at 6-8.) Again, these arguments were addressed in the Report and Recommendation, which notes that the ALJ rationally interpreted the medical assistant's statement that Lyrica was effective to mean just that, that the ALJ could rationally interpret Plaintiff's failure to complain of worsening fibromyalgia symptoms during the relevant period as contradictory to her claimed limitations from that impairment, and the ALJ rationally considered the amount of walking and overall physical exertion Plaintiff's travelling required— as reported by Plaintiff—to undermine her testimony regarding her physical limitations. (Dkt. No. 12 at 9-14.)

The Court therefore finds that the ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective statements.

**Conclusion**

Because the ALJ's findings are supported by substantial evidence and free of harmful legal error, the Court ADOPTS Magistrate Judge Tsuchida's Report and Recommendation, AFFIRMS the Commissioner's decision that Plaintiff is not disabled, and DISMISSES this action with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 9, 2019.

Marsha J. Pechman
United States District Judge